## Chicago Suburban Water & Light Company v. David A. Hyslop.

### Gen. No. 12,745.

1. CONTRIBUTORY NEGLIGENCE—*what not, as a matter of law.* It is not contributory negligence as a matter of law for a servant to fail to discover that an electric wire which he has been ordered to shake is a live wire.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed November 23, 1906.

**Statement by the Court.** This is an appeal by the defendant from a judgment for $4,000 recovered by an employe of the defendant in an action on the case for personal injuries.

Defendant operated an electric light plant and had as a part of its plant a pole at the corner of Erie and Grove streets, Oak Park, at the top of which was a transformer. A primary, high potential current of electricity was carried to the transformer by a circuit running from the dynamo, was changed in the transformer by induction to a low potential secondary, or service current, which was carried from the transformer by a circuit to which the lamps were attached. The wire which ran from the dynamo was connected with the induction coil in the transformer by what is by the witnesses called a "fuse" or "fuse plug." The "fuse" or "fuse plug" consisted of the "fuse

box" which was a part of the transformer, of a "fuse
plug" which fitted into the "fuse box" and could be
taken out and put back, and of the "fuse" proper
which was a narrow strip of fusible metal intended to
connect the end of the wire which ran from the dy-
namo with the end of the wire which formed the induc-
tion coil.    When this strip of metal is melted the cir-
cuit is broken and the fuse is said to be "blown."

Plaintiff when he was hurt was nineteen years old,
had been in the employ of the defendant a year and a
half, and during the six months preceding his injury
had considerable experience in "trouble shooting" or
"chasing trouble;" that is, in repair work on the lines
of defendant.

July 19, 1902, between four and five in the after-
noon, Mr. Privat, the chief electrician of defendant,
took plaintiff in his buggy at the power house and went
to hunt for a break in defendant's lines.    They went
to the pole above referred to and plaintiff, by order of
Privat, climbed the pole, found that a fuse in the trans-
former had been "blown," so told Privat, who di-
rected plaintiff to put in a new fuse.    Plaintiff took
out the plug, put a new fuse in it and pushed the plug
back into the fuse box.    Privat then asked plaintiff in
which circuit he found the fuse out, plaintiff answered
in the circuit running east from Grove avenue.    Pri-
vat could not see the wires distinctly from the ground
where he was, and told plaintiff to shake the wire that
connected with the fuse that was out.    Plaintiff took
hold of the wire to shake it and a current of electricity
passed through his body and he fell to the ground and
received the injury complained of.    The wire which
plaintiff caught hold of had been insulated at one time,
but the insulation was then defective and had been in
that condition for a long time.

The declaration set out the above facts in relation
to the business of the defendant, the employment of
plaintiff and alleged: that the defendant negligently,
etc., knowing or by reasonable diligence could have

known, that said wires were charged with electricity, were insecurely insulated, and that plaintiff was unprotected against the same, ordered plaintiff to shake said wire; that plaintiff did so exercising reasonable care, etc., and being unaware of the danger attendant upon carrying out said order, and as he was in the act of shaking said wires received the shock in question.

WOOD & OAKLEY, for appellant; HORACE S. OAKLEY and ALBERT M. KALES, of counsel.

THEODORE G. CASE, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

The grounds of reversal urged are: that the plaintiff was guilty of contributory negligence; that he assumed the risk; that the court erred in refusing to give instruction 20 asked by defendant, and in denying defendant's motion in arrest of judgment.

The plaintiff at the time of his injury had had considerable experience in an electric light plant and knew, in general, at least, its danger. He knew that it was dangerous to take hold of a "live" uninsulated wire with a bare hand. He knew that there was little or no danger in handling such a wire with rubber gloves.

The insulating material was hanging in strips from the wire which plaintiff took hold of, and if plaintiff had looked at the wire at all, he would have seen that it was bare, and, we think, it must be held that he ought to have known that it was not covered or insulated.

There is in the record evidence tending to show that in July it was not customary to turn on the electric current before seven in the evening, unless the day was dark; that the repairs were made on the lines between seven in the morning and half past five in

the evening; that when the current was to be turned on earlier than usual, it was the custom for Mr. Dodge, the superintendent of defendant, or Mr. Privat, its chief electrician, to notify the men engaged in repairing the lines; that when the current was on, the company furnished to repair men rubber gloves to handle a wire with. Plaintiff took no gloves with him when he climbed the pole and it was not shown that there were any gloves in Privat's buggy. He and Privat went directly from the power house to the pole in question. We think that in going out to repair the line it was the duty of Privat to learn whether the current was to be turned on earlier that day than usual, and that in the absence of any notice that it was to be turned on earlier than usual, plaintiff, when he was ordered by Privat to shake the wire, in the absence of any notice or knowledge that the current was on, might assume and act upon the assumption that the current had not yet been turned on. When a fuse plug, with a fuse in it, is put back into the fuse box, if the current is on, when the connection is made through the fuse between the wire of the primary circuit and the wire of the secondary circuit, there are sparks. Plaintiff knew this and it is contended that if he had used ordinary care he would have seen the sparks and known that the current was on.

Plaintiff was upon a pole thirty feet from the ground with one leg over a cross-arm. The act of putting the fuse plug back into the box after the new fuse has been put in, did not require him to keep his eyes upon the plug as he shoved it back into place. Plaintiff testified that he did not see any sparks when he shoved the plug back into the box, and although, if the current was then on, he could, if he had kept his eyes on the plug as it went into the fuse box, have seen sparks. We cannot say that, under the circumstances disclosed by the evidence, the fact that plaintiff saw

no sparks is conclusive evidence of contributory negligence on his part, but are of the opinion that upon all the evidence, the question whether the plaintiff was guilty of contributory negligence was a question for the jury upon which their verdict must be held conclusive.

The order was specific, not general. It was to take hold of the wire and shake it. Privat knew that plaintiff had no gloves, and there was but one way in which plaintiff could take hold of the wire and shake it, and that was with a bare hand. The plaintiff knew of the danger of touching a "live" wire. If the only just conclusion that can be drawn from the evidence is, that if he had exercised ordinary care he would have known that the wire he was ordered to touch was a "live" wire, then he ought to have known that the wire was a "live" wire, and if so, he assumed the risk. But, as has been said, in our opinion, the question whether plaintiff's failure to discover that the wire he was ordered to touch was a "live" wire, was the result of the failure on his part to exercise ordinary care, was, under the evidence, a question for the jury and therefore the question whether he assumed the risk was a question for the jury, upon which their verdict is also conclusive.

The following is defendant's refused instruction 20:

"The jury are instructed that if they believe from the evidence that the wires of the defendant company at the time and place of the accident in question were in a dangerous condition, and that the plaintiff's injury was a result of that dangerous condition, then if the jury further believe from the evidence that such dangerous condition, if any, which existed, was one of the usual and ordinary dangers to which persons in the employ of the defendant company in the capacity in which the plaintiff in this case was employed, were exposed, and that the plaintiff was sufficiently experienced in the duties of his position to be aware, by the exercise of ordinary observation, of such ordinary and usual dangers, and that the plaintiff in

this case at the time of the accident in question was in the discharge of the usual, customary and ordinary duties of his employment, then the plaintiff assumed the risk of said dangerous condition, if any, of the defendant's wires, and your verdict must be for the defendant, even though you further believe from the evidence that the plaintiff was ordered to take hold of the wire in question by the superintendent of the defendant company present at the time, and that said superintendent of the defendant company knew of the dangerous condition, if any, of the said wires and failed to warn the plaintiff.''

This instruction is framed upon the theory that although the plaintiff was given a specific order, he still assumed the risk of the dangerous condition, if such dangerous condition was one of the ordinary dangers of his employment and he had sufficient experience to be aware of such danger and was at the time of his injury in the discharge of his usual duties. It is conceded that the question thus presented has not been directly passed upon in this state. The question of assumed risk has, however, been before our Supreme Court in numerous cases, and we find no support in any of such cases for the rule contained in this instruction, and are of opinion that the instruction was properly refused.

The court did not, we think, err in denying the motion in arrest.

Finding no reversible error in the record, the judgment of the Superior Court will be affirmed.

*Affirmed.*